2015 SEP 28 AM 9: 11


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STERLING SAVINGS BANK, | ) | No. 72149-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY XU and NANLING CHEN, | ) | |
| husband and wife and the marital | ) | |
| community comprised thereof; | ) | UNPUBLISHED OPINION |
| LONGWELL PARKRIDGE, LLC, | ) | |
| a Washington limited liability company; | ) | |
| and PARKRIDGE PROPERTY, LLC, | ) | |
| a Washington limited liability company, | ) | |
| | ) | |
| Respondents. | ) | FILED: September 28, 2015 |

SCHINDLER, J. — Following a bench trial, the court entered a judgment against Sterling Savings Bank for approximately $2.7 million. Sterling Bank contends the court erred in denying its request for an offset. Because the unchallenged findings establish Sterling Bank had no right to the $2.7 million and Sterling Bank did not meet its burden of proving it was entitled to an offset, we affirm.

FACTS

Parkridge Property LLC

Charles Diesing owned a 249-unit apartment building in Everett. In 2008, Diesing agreed to enter into a partnership with Stanley Xu and his spouse to finance their purchase and make improvements to the apartment building.

Diesing through CFD Funding I LLC (CFD LLC) and Xu through Longwell Parkridge LLC (Longwell LLC) formed Parkridge Property LLC (Parkridge LLC). Parkridge LLC obtained a $14.95 million loan from General Electric Capital Corporation (GE Capital) to finance the purchase and make improvements to the apartment building. The loan was secured by a deed of trust on the apartment building.

CFD LLC agreed to provide $6 million in supplemental financing in exchange for a 75 percent equity interest in Parkridge LLC and a 7.5 percent preferred return on its capital contribution. CFD LLC and Longwell LLC agreed Parkridge LLC would redeem CFD LLC's ownership interest for $6 million within three years. Xu personally guaranteed the obligation to repay the $6 million by August 2011.

CFD LLC attorney Robert deNormandie and Longwell LLC attorney Rebecca Wiess drafted the operating agreement for Parkridge LLC. The agreement designates Longwell LLC as the managing member of Parkridge LLC and CFD LLC as a nonmanaging member.

The operating agreement requires Longwell LLC to "act in a fiduciary manner" on behalf of Parkridge LLC and CFD LLC. The agreement requires Longwell LLC to obtain the written consent of CFD LLC in order to borrow "any money" on behalf of Parkridge LLC. The agreement also requires Longwell LLC to obtain CFD LLC's written consent before granting "any lien, claim, encumbrance or security interest" against the property.

The agreement states, in pertinent part:

> (a) **Limitations on Authority.** The written approval of the Managing Member and the Non-Managing Member shall be required for each of the following actions:
>
> . . . .

(iv)  Any refinance or replacement of the Bank Loan or the borrowing of any money by the Company (other than trade payables incurred in the ordinary course of business) or the voluntary granting of any lien, claim, encumbrance or security interest by the Company with respect to any asset of the Company, as security for the debts and obligations of the Company or otherwise.

Sterling Savings Bank Loan

Without the knowledge or consent of CFD LLC or Diesing, Xu applied for an $18 million loan from Sterling Savings Bank (Sterling Bank) in January 2011. Xu represented that Longwell LLC had the authority to execute loan documents on behalf of Parkridge LLC in the loan application. Xu submitted a "forged fraudulent and false" operating agreement for Parkridge LLC that identified Xu and his spouse as the only members and the managing members.

Although it normally takes between 45 and 60 days to approve a commercial loan, Sterling Bank gave its attorney only 9 days to do so. Sterling Bank's attorney recommended the bank obtain a legal opinion from the attorney representing Parkridge LLC confirming the authority of Longwell LLC to execute loan documents on behalf of Parkridge LLC.

Attorney Rebecca Wiess drafted an opinion letter on behalf of Parkridge LLC. The letter states, in pertinent part, "The borrower has all requisite power and authority to carry on its business as now conducted, to own its property, and to execute and deliver and to perform all of its obligations under the loan documents." Neither Sterling Bank's attorney nor anyone at Sterling Bank read the opinion letter before closing the $18 million loan. The loan was secured by a deed of trust on the apartment building.

Sterling Bank paid off the GE Capital loan of approximately $15 million. Sterling Bank deposited the remaining $2.76 million directly into Xu's personal bank account.

## CFD LLC Complaint against Xu, Longwell LLC, and Sterling Bank

After Diesing learned about the Sterling Bank loan, he filed a complaint on behalf of CFD LLC to quiet title and for damages against Xu, Longwell LLC, and Sterling Bank. The lawsuit alleged claims of breach of contract, breach of fiduciary duty, conversion, and unjust enrichment against Xu and Longwell LLC.[1] CFD LLC acknowledged Sterling Bank was entitled to reimbursement for the approximately $15 million paid to GE Capital. CFD LLC requested an award of damages "in an amount to be proven at trial, but not less than $3,000,000.00, plus penalties, interest, costs and attorneys' fees."

CFD LLC alleged the deed of trust that Longwell LLC executed to secure the loan from Sterling Bank was void. CFD LLC alleged the bank "knew or should have known" that Longwell LLC could not execute loan documents or grant a security interest against the apartment building on behalf of Parkridge LLC. The court granted CFD LLC's motion to appoint a receiver.

## Summary Judgment against Xu and Longwell LLC

In December 2011, the court granted CFD LLC's motion for summary judgment against Xu and Longwell LLC. The court ruled as a matter of law that Xu and Longwell LLC were liable to CFD LLC for breach of contract and breach of fiduciary duty.

## Sale of Property and CR 2A Agreement

In June 2012, the receiver negotiated the sale of the apartment building for $17.85 million. CFD LLC and Sterling Bank entered into a CR 2A settlement agreement. CFD LLC agreed Sterling Bank was entitled to approximately $15 million of the sale proceeds under the doctrine of equitable subrogation. The parties agreed that

---

[1] Upon learning that Sterling Bank deposited the loan proceeds directly into Xu's personal bank account rather than Parkridge LLC's corporate account, CFD LLC withdrew its claims for conversion and unjust enrichment.

distribution of the remaining net proceeds of approximately $2.7 million to Sterling Bank would be "without prejudice to either party to assert claims and defenses as to which party has priority to the proceeds in excess of the $14,950,000 amount claimed under the doctrine of equitable subrogation."

The court granted the receiver's motion to approve the sale. The order states, in pertinent part:

> [It is] FURTHER ORDERED that the sale of the Property shall be free and clear of any and all liens and of all rights of redemption and that any and all security interests and other liens encumbering the Property shall transfer and attach to the proceeds of the sale of the Property . . . in the same order, priority, and validity as such liens had with respect to the Property immediately before the sale.

Amended Complaint

In April 2013, the court granted CFD LLC's motion to amend the complaint to assert a legal malpractice and negligence claim against attorney Rebecca Wiess. The court also granted the motion to substitute Parkridge LLC as the real party in interest.

In answer to the second amended complaint, Sterling Bank asserted a counterclaim for breach of contract. Sterling Bank alleged Parkridge LLC defaulted on its repayment obligation under the loan agreement and requested judgment for the outstanding amount of the loan plus interest, costs, and attorney fees.

In February 2014, Sterling Bank filed a motion for summary judgment against Xu and his spouse for breach of the guaranty and fraud and requested an award of $676,217.42 in damages. The court granted the motion. The court entered judgment against Xu and his spouse in the amount of $676,217.42 plus attorney fees.

A month before the trial scheduled in April 2014, Parkridge LLC settled with Wiess for $1 million.

5

Trial

The only issue at trial was the dispute between Parkridge LLC and Sterling Bank over the approximately $2.7 million in sale proceeds. Sterling Bank claimed it had priority under the deed of trust that secured the loan to Parkridge LLC executed by Xu on behalf of Longwell LLC. Sterling Bank asserted the deed of trust was valid because Longwell LLC had actual and apparent authority to execute the loan documents. Sterling Bank argued it reasonably relied on the representations of Xu and Wiess in agreeing to make the $18 million loan. In the alternative, Sterling Bank argued it was entitled to enforce the deed of trust against Parkridge LLC as a bona fide encumbrancer. In addition to an award of the approximately $2.7 million in sale proceeds, Sterling Bank claimed it was entitled to a deficiency judgment against Parkridge LLC in the amount of $725,544.92.

A number of witnesses testified during the six-day bench trial including CFD LLC attorney Robert deNormandie, Sterling Bank attorney Ren Hayhurst, and Sterling Bank Executive Vice President Robert Williams.

When asked about the opinion letter written by Wiess, Hayhurst admitted he did not "actually read or review the opinion letter itself before the loan closed" and did not "even see the opinion letter until after this lawsuit started." Sterling Bank Executive Vice President Williams testified that neither he nor any employee of Sterling Bank read the opinion letter before the $18 million loan closed.

In closing, Sterling Bank argued it was not bound by the CR 2A agreement regarding the distribution of sale proceeds. The attorney asserted that "Parkridge, as far as I'm concerned, was not a party to that agreement" because "Parkridge was not

6

the plaintiff at the time." Sterling Bank also argued it would be inequitable to award Parkridge LLC the sale proceeds because of the settlements with Parkridge LLC, Sterling Bank, Xu, Longwell LLC, and Wiess.

The court ruled that because Longwell LLC did not have the authority to borrow money or grant a security interest without CFD LLC's consent, the deed of trust executed by Xu on behalf of Longwell LLC to secure the $18 million loan from Sterling Bank was void. The court found Sterling Bank should have conducted its own investigation to verify the authority of Xu on behalf of Longwell LLC to obtain the loan and execute the deed of trust. The court found the opinion letter written by Wiess "plays no role because it wasn't read, it wasn't reviewed, and it wasn't relied upon." The court awarded Parkridge LLC "$2.7 million roughly of proceeds over and above the $15 million necessary to pay off the loan."

At the conclusion of the oral ruling, the court asked, "Is there anything I failed to address?" Sterling Bank's attorney responded, "[W]hat has not been addressed is the $1 million payment that Rebecca Wiess' insurance carrier paid to the plaintiffs already and whether that's an offset to that." The court found there was no evidence "to support an offset to suggest that that is attributable to this dispute."

The court entered extensive written findings of fact and conclusions of law. The conclusions of law state the deed of trust was void "because it was granted without CFD's knowledge or consent in violation of the Parkridge Agreement."

The court found that Sterling Bank did not read or rely on the opinion letter drafted by Wiess and concluded the letter did not constitute a manifestation of apparent authority upon which Sterling Bank could reasonably rely. The court also found that

because "a reasonable further inquiry would have revealed that Xu was not authorized to enter into the loan on Parkridge's behalf," Sterling Bank was not a bona fide encumbrancer.

The court concluded that under the doctrine of equitable subrogation, "Sterling was entitled to an equitable lien on the Property" in the amount of $15,014,646.77 for paying the GE Capital loan.[2] The court concluded Sterling Bank was "bound by its [CR 2A] agreement" that the distribution of the sale proceeds to the bank "was without prejudice of either party to assert claims and defenses as to which party has priority to the proceeds in excess of the amount that Sterling Bank paid to GE Capital."

The court concluded Parkridge LLC was entitled to the sale proceeds that exceeded the equitable lien. The court entered judgment against Sterling Bank for $2,699,374.07. The court denied Sterling Bank's request for an offset, finding the bank "did not show what part, if any, of Parkridge LLC's settlement with Wiess was attributable to the claim it seeks to offset." The court concluded that in the absence of any evidence about the claims resolved in the settlement between Parkridge LLC and Wiess, Sterling Bank "did not meet its burden of proving" that it was entitled to the equitable remedy of an offset.

## ANALYSIS

Sterling Bank appeals the denial of its request for an offset of the judgment. Sterling Bank does not challenge the determination that the deed of trust is void and that the bank is not a bona fide encumbrancer. Sterling Bank challenges only the

---

[2] See Columbia Cmty. Bank v. Newman Park, LLC, 166 Wn. App. 634, 644-45, 279 P.3d 869 (2012) (holding that under the doctrine of equitable subrogation, a lender who repaid the borrower's previous loan is entitled to assume the position of the first priority lienholder), aff'd, 177 Wn.2d 566, 570, 304 P.3d 472 (2013).

conclusion that the bank did not present any evidence to show what part of the Wiess settlement was attributable to the claim it seeks to offset and did not meet its burden of proving it was entitled to an offset.

We review a trial court's findings of fact entered after a bench trial to determine whether they are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Where a factual finding is denominated as a conclusion of law, we treat it as a finding of fact. State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wn. App. 614, 624 n.13, 829 P.2d 217 (1992). Where, as here, the findings of fact are not challenged, we treat the findings of fact as verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

Because the unchallenged findings support the conclusion that the deed of trust is void and unenforceable, we conclude Sterling Bank had no right to the disputed sale proceeds. In any event, substantial evidence supports the conclusion that Sterling Bank did not meet its burden of showing it was entitled to an offset for the $1 million settlement with Wiess.

The party requesting an offset has the burden of proving the prevailing party recovered from two defendants for the same injury. Puget Sound Energy, Inc. v. Alba Gen. Ins. Co., 149 Wn.2d 135, 141, 68 P.3d 1061 (2003); Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 673-75, 15 P.3d 115 (2000). To meet this burden, the party seeking an offset must make an affirmative showing as to which

portion, if any, of the recovery "was attributable to the claim it seeks to offset." Puget Sound Energy, 149 Wn.2d at 141.

Settlements typically involve "far more than a simple release of liability" for a particular claim alleged in the complaint. Weyerhaeuser, 142 Wn.2d at 673. In many cases, the settling party "also purchase[s] certainty by avoiding the risks of an adverse trial outcome—not to mention forgoing the expenses associated with a lengthy trial and appeal." Weyerhaeuser, 142 Wn.2d at 673. As the trial court noted, the amount paid in a settlement often represents "a release from an unquantifiable basket of risks and considerations." Weyerhaeuser, 142 Wn.2d at 673.[3]

Sterling Bank relies on the complaint CFD LLC filed against Wiess, the testimony of CFD LLC attorney Robert deNormandie, and findings of fact 42 and 45 to argue it met its burden of proving it was entitled to an offset for the $1 million settlement between Parkridge LLC and Wiess.

Neither the allegations in the complaint against Wiess nor the testimony of deNormandie show what portion of the settlement is attributed to the asserted claims. DeNormandie testified that CFD LLC sued Wiess only "in connection with" the fraudulent loan transaction. The amended complaint alleges Wiess breached her duty of care by failing to confirm whether CFD LLC consented to refinancing the GE Capital loan, failing to "carefully review" the loan documents that Longwell LLC submitted, and

---

[3] Internal quotation marks omitted.

10

issuing the opinion letter to obtain the loan from Sterling Bank.[4]

Finding of fact 42 and 45 do not support the argument that the bank met its

burden of proving it was entitled to an offset. Finding of fact 42 states:

> Rebecca Wiess drafted an opinion letter on Parkridge's behalf
> [Exhibit 52]. Xu e-mailed Wiess' opinion letter to Chicago Title on the
> evening of Sunday, January 30, 2011. The Loan closed on Monday,
> January 31, 2011.

Finding of fact 45 states:

> On the day the loan closed, a representative from Chicago Title
> informed [Sterling Bank's outside counsel] Hayhurst that Chicago Title had
> received the opinion letter, that it was on Wiess' letterhead and that Wiess
> had signed the letter.

Further, Sterling Bank ignores the unchallenged findings that establish neither

Sterling Bank's attorney nor anyone at the bank read or relied on the opinion letter

before closing the loan. Finding of fact 43 states:

> Sterling did not read Wiess' Opinion Letter before the Loan closed.
> Sterling did not rely upon Wiess' Opinion Letter in making the Loan.

Finding of fact 44 states:

> Neither Hayhurst nor any other attorney at [his law firm] read
> Wiess' opinion letter before the Loan closed. Hayhurst doesn't know
> when [his law firm] actually received a copy of the opinion letter. Hayhurst
> did not read the opinion letter until after the lawsuit was filed in July 2011.

Because substantial evidence supports the court's finding that Sterling Bank did

not meet its burden of establishing "what part, if any, of Parkridge's settlement with

---

[4] Paragraph 9.12 of the amended complaint alleges:

Wiess breached the duty of care she owed towards Parkridge by: (1) failing to verify that CFD approved the Sterling Loan, as required by the terms of the Parkridge Agreement; (2) failing to carefully review the Sterling loan documents and discover that Longwell was falsely representing itself to be Parkridge's sole member; and (3) issuing the [Opinion] Letter, in which she falsely represented that Parkridge's "execution, delivery and performance" of the loan documents "had been duly authorized by all necessary action" and did not "require any consent or approval of any members" of Parkridge or "violate any provision of the [Parkridge] articles of organization or operating agreement."

Wiess was attributable to the claim it seeks to offset," we conclude the court did not abuse its discretion in denying the request for an offset. See Scott's Excavating Vancouver, LLC v. Winlock Props., LLC, 176 Wn. App. 335, 348, 308 P.3d 791 (2013) ("We review a trial court's decision to grant an offset for abuse of discretion.").

We affirm entry of the judgment against Sterling Bank. Upon compliance with RAP 18.1, Parkridge LLC is entitled to attorney fees and costs on appeal as provided for in the deed of trust. See Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 839, 100 P.3d 791 (2004).

WE CONCUR: