FILED
COURT OF APPEALS
DIVISION II

2013 AUG 27 AM 8: 34

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCOTT'S EXCAVATING VANCOUVER, LLC, a Washington corporation, | |
| Plaintiff, | No. 42796-6-II |
| v. | |
| WINLOCK PROPERTIES, LLD fka WINLOCK INDUSTRIAL PARK, LLC; ROCKMANN DEVELOPMENT GROUP, LLC; | |
| Defendants, | PUBLISHED OPINION |
| GIBBS & OLSON, INC., | |
| Respondent, | |
| FIRST-CITIZENS BANK & TRUST COMPANY | |
| Appellant. | |

JOHANSON, J. — First-Citizens Bank & Trust Co. appeals a trial court's order concluding that Gibbs & Olson, Inc. ("G&O") had lien priority over First-Citizens' deed of trust and that G&O was entitled to foreclose its mechanics' lien for engineering services provided for

development of a 50-acre, 200-lot subdivision. First-Citizens argues that the trial court erroneously determined that (1) several contract amendments related back to the earlier contract between Winlock Properties, LLC and G&O; (2) G&O's mechanics' lien had priority over First-Citizens' deed of trust; (3) G&O reasonably mitigated its damages; and (4) First-Citizens was not entitled to an offset.

We hold that the trial court did not err because (1) substantial evidence supports the conclusion that the parties intended the 2005 contract and the five subsequent amendments to form a single contract; (2) the amendments related back to the initial 2005 contract and, therefore, G&O's mechanics' lien had priority over First-Citizens' deed of trust; (3) under the circumstances, G&O acted reasonably in mitigation; and (4) First-Citizens is not entitled to an offset. Accordingly, we affirm. We also award attorney fees and costs to G&O as the prevailing party under RCW 60.04.181(3).

## FACTS

In February 2005, G&O sent a proposal to Winlock for engineering and surveying services on Winlock's new housing and commercial development called the Grand Prairie Subdivision.[1] Winlock planned to turn its undeveloped 50-acre pasture land into a 200-lot subdivision. In July, the parties executed a contract based on the February proposal. The contract required G&O to provide preliminary design work for the entire 50-acre project. It also required G&O to help obtain government approval for the entire project and to provide final design work and other engineering work on portions of the project. Additionally, it contained

---

[1] Also initially referred to as the Winlock Subdivision Site and Winlock Heights Subdivision Project.

2

contract estimates for the cost of completion of design work and a description of further engineering services necessary to complete the entire project, to be accomplished in five phases. The contract provision for future amendments stated:

> Following completion of the Final Design Phase Services, and after receipt of written authorization from [Winlock], [G&O] shall prepare an amendment to this Agreement for completion of the construction phase and operational phase services. Upon approval of the amendment, [G&O] shall proceed with the work on this project.

Ex. 3 at 3. The contract price for G&O's initial work was $112,000 and any costs exceeding that amount needed Winlock's approval.

Prior to January 10, 2006, Winlock provided G&O's engineering work to First-Citizens' predecessor (Venture Bank) to support Winlock's loan application. Thus, Venture had notice that G&O began work on the property before the $3.7 million loan from Venture was approved. On January 10, 2006, Venture secured the loan by recording a deed of trust against the property. Venture did not obtain a subordination agreement from G&O that would have assured Venture's first priority position for its deed of trust.

As the first phase progressed, Winlock and G&O revised the scope and cost of the work that G&O would perform. The revisions were memorialized in written "Amendments." Ex. 4-10. In April 2006, the parties agreed to three such amendments. By June 2006, G&O completed the first phase of the development, and Winlock paid G&O in full for it.

In September 2006, the parties agreed to two more amendments. The first paragraph of each Amendment included the following language:

> This Amendment revising the Scope of Work, Schedule, and Budget for Engineering Services is hereby attached to and made a part of the Agreement for Engineering Services dated July 22, 2005, between [Winlock] and [G&O]. This

> Amendment authorizes [G&O] to perform Construction . . . Services for [Winlock], as more fully described herein.

Ex. 5 at 1, Ex. 6, Ex. 7 at 2, Ex. 9, Ex. 10 at 1.

From July 2006 through January 2008, G&O continued performing its obligations under the amendments, but after October 2006, Winlock made only one more payment. Winlock assured G&O every few weeks that it was working on financing and that it would eventually pay G&O. Finally, on February 4, 2008, G&O stopped work for lack of payment. By that time, Winlock had failed to pay G&O $155,755.59, plus interest. On March 7, G&O recorded a lien claim in compliance with title 60.04 RCW for the unpaid amount. On July 18, G&O sued to foreclose the lien.

Winlock also defaulted on its loan with Venture and Venture foreclosed on its deed of trust. On August 31, 2009, Venture filed its trustee's deed and became the owner of the 50 acre parcel, except for lots 1, 2, 3, 7, 18 and tract A of phase one of the subdivision.[2] In May 2010, Venture transferred its ownership to First-Citizens by filing a receiver's deed. First-Citizens then substituted for Venture in G&O's foreclosure lawsuit.

At a bench trial in September 2011, the primary issue before the court was whether G&O's lien had priority under title 60.04 RCW over Venture's recorded deed of trust. First-Citizens asserted affirmative defenses of laches, failure to mitigate, and statute of limitations. The trial court ruled that (1) there was a single contract between Winlock and G&O; (2) G&O's

---

[2] G&O's lien also excluded lots 1, 2, and 3. In October 2007, Winlock transferred ownership of lots 7 and 18 to Grand Prairie Plaza LLC by statutory warranty deed. In March 2008, Winlock transferred ownership of tract A of phase one to Grand Prairie Plaza LLC by statutory warranty deed And, G&O reached a settlement agreement with Grand Prairie Plaza LLC to release its claim of lien as to lots 7, 18, and tract A in exchange for $4,000.

mechanics' lien had priority over First-Citizens' deed of trust; (3) G&O reasonably mitigated its damages; and (4) First-Citizens was not entitled to an offset. First-Citizens appeals.

## ANALYSIS

First-Citizens assigns error to several of the trial court's findings of fact and conclusions of law. We conclude that First-Citizens' claims fail.

### I. STANDARD OF REVIEW

Where a party challenges a trial court's findings of fact and conclusions of law, we limit our review to determining whether substantial evidence supports the findings and whether those findings, in turn, support its legal conclusions. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000), *review denied*, 142 Wn.2d 1018 (2001). Substantial evidence is "defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006) (quoting *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). This is a deferential standard, which views reasonable inferences in the light most favorable to the prevailing party. *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995). We also defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001). The party challenging a finding of fact bears the burden of showing that the record does not support it. *Panorama*, 102 Wn. App. at 425. We review a conclusion of law erroneously labeled a finding of fact as a conclusion of law and review a finding of fact erroneously labeled as a conclusion of law as a finding of fact.

*Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We review a trial court's conclusions of law de novo. *Sunnyside*, 149 Wn.2d at 880.

## II. A SINGLE CONTRACT

First-Citizens challenges several trial court findings relating to whether the July 2005 contract and the five amendments constituted one contract or a series of independent contracts. We hold that substantial evidence supports the trial court's findings that the July 2005 contract and the five amendments were one contract.

Richard Riley, G&O's president and civil engineer, and Thomas Ossinger, Winlock's project manager, both testified that G&O and Winlock intended one contract. Riley testified that G&O and Winlock intended that all the engineering and surveying for all phases of the development (design, surveying, construction inspection), for all 200 lots would be provided by G&O, and that additional amendments between Winlock and G&O would be executed as the work progressed. Riley and Ossinger testified specifically that the parties intended the amendments to be part of the July 2005 contract. The July 2005 contract established the framework for the entire project and for additional details for future work to be provided by amendments. Additionally, the July 2005 contract's future amendments language and the opening paragraph of each Amendment support the finding that the parties intended the amendments to be part of the July 2005 contract.

First-Citizens also challenges the trial court's finding that G&O and Winlock intended to limit contract breach consequences by using the amendment process and that the five amendments were not separate independent contracts. Substantial evidence also supports this finding. Riley and Ossinger testified that by using a series of agreements, they would minimize

the risks to both parties. Ossinger testified that the parties intended to have one contract with subsequent amendments and that if either party was unsatisfied with how the project was going, the amendment process would limit their future obligations.

Next, First-Citizens challenges the trial court's finding that G&O provided professional services in a continuous course of employment from June or July 2005 through February 2008 under the terms of the July 2005 contract. Again, Riley and Ossinger provided substantial evidence to support this finding. Riley testified that under the July 2005 contract, G&O designed a water system, sewer system, roads, streets, and a storm drain system for the entire 200-lot subdivision and then focused on more detailed work on phase one. The amendments then allowed G&O to continue similar work on phase two. Riley also testified that G&O's work under the amendments was necessary to complete the 200-lot subdivision described in the original July 2005 contract. From Spring 2006 to February 4, 2008, G&O performed services in accord with the amendments. Thus, we conclude that substantial evidence supports the challenged findings of fact.

III. Lien Priority Under Chapter 60.04 RCW

First-Citizens also challenges the trial court's conclusions, erroneously labeled as findings of fact 3, 4, 5, and 6, that the parties had a single contract for the purposes of chapter 60.04 RCW. We review mislabeled conclusions of law de novo. *Willener*, 107 Wn.2d at 394. And First-Citizens challenges the trial court's conclusion that G&O's lien claim had priority over

No. 42796-6-II

First-Citizens' deed of trust.[3] We review de novo the trial court's conclusions of law regarding interpretation of lien priority under chapter 60.04 RCW. *Sunnyside*, 149 Wn.2d at 880.

> RCW 60.04.021 authorizes
>
> any person furnishing labor, professional services, materials, or equipment for the improvement of real property [to] have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner.

Claims of lien established under chapter 60.04 RCW "shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services . . . by the lien claimant." RCW 60.04.061.

Mechanics' and materialmen's liens[4] under chapter 60.04 RCW are "creatures of statute, in derogation of common law, and therefore must be strictly construed to determine whether a lien attaches." *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009). But if a court determines that a party's mechanics' or materialmen's lien attaches and is covered by chapter 60.04 RCW, then the court liberally construes the statute to provide security for all parties intended to be protected by its provisions. RCW 60.04.900; *Haselwood*, 166 Wn.2d at 498.

---

[3] These challenged conclusions are closely related because if the agreements are one contract for the purposes of chapter 60.04 RCW then G&O necessarily would have lien priority over First-Citizens' deed of trust, entitling it to foreclose First-Citizens' deed.

[4] There is no dispute that G&O qualifies as a mechanic or materialmen for this project under chapter 60.04 RCW. Chapter 60.04 RCW refers to "mechanics' and materialmen's liens," which includes labor, professional services, materials, or equipment. Courts have defined materialmen as those who provide materials which will be incorporated into a building or finished structure. *Nat'l Concrete Cutting, Inc. v. Nw. GM Contractors*, 107 Wn. App. 657, 661, 27 P.3d 1239 (2001), *review denied*, 145 Wn.2d 1027 (2002). Because G&O provided professional engineering services, we refer to its lien as a mechanics' lien for simplicity.

8

Mechanics' liens are a statutory exception to the general rule of first in time, first in right priority between creditors. *A.A.R. Testing Lab., Inc. v. New Hope Baptist Church*, 112 Wn. App. 442, 448, 50 P.3d 650 (2002). RCW 60.04.061 is known as the "relation back" statute. *Zervas Grp. Architects, P.S. v. Bay View Tower LLC*, 161 Wn. App. 322, 326, 254 P.3d 895 (2011). Thus, such liens create an "off-the-record" interest that may be senior to interests actually recorded before the lien's recording but after commencement of work on the project. *A.A.R. Testing*, 112 Wn. App. at 448.

We conclude, as the trial court did, that G&O's mechanics' lien has priority over First-Citizens' recorded deed of trust. First-Citizens' predecessor-in-interest (Venture) had knowledge that G&O started work on the property before it granted the loan secured by the deed of trust.[5] G&O knew that Winlock faced financial difficulties and, therefore, the parties formed a contract that limited the consequences if either party failed to meet its contract obligations. Thus, the parties agreed to an overall project contract that anticipated multiple phases, with details to be covered by subsequent contract amendments relating back to the original 2005 contract. We hold that substantial evidence shows that the July 2005 contract and its subsequent amendments were parts of a single contract. All of G&O's work was furnished at Winlock's request under the contract and G&O's lien for all its work relates back to the date it first began work in 2005. Accordingly, G&O's mechanics' lien has priority over First-Citizens' deed of trust that was

---

[5] Venture failed to adequately protect itself by obtaining a subordination agreement. This finding of fact is unchallenged and is therefore a verity on appeal. *Moreman v. Butcher*, 126 Wn.2d 36, 39, 891 P.2d 725 (1995).

No. 42796-6-II

recorded in January 2006 and G&O is entitled to foreclose its lien without first paying First-Citizens.[6]

## IV. G&O'S MITIGATION

First-Citizens also challenges finding 22 to the extent the trial court found that G&O could have stopped work at any point but that doing so would have harmed it because G&O's work continued to make the properties sellable. Both Riley's and Ossinger's testimony supports this finding. Riley testified that (1) G&O and Winlock had a very good working relationship and that G&O continued working after Winlock became late on payments because G&O understood that Winlock was trying to secure financing to pay G&O, and (2) G&O wanted to get the first two phases completed and the final plat map recorded so Winlock could start selling lots. Ossinger testified that the parties' goal was to use money from the sales to pay G&O.

First-Citizens also challenges finding 22 wherein the trial court found that G&O mitigated its damages by continuing to work after Winlock stopped paying. This portion of finding 22 is a conclusion of law that we review de novo. *Willener*, 107 Wn.2d at 394. Finding 22 supports this conclusion. *Panorama*, 102 Wn. App. at 425.

The doctrine of mitigation of damages prevents an injured party from recovering damages that could have been avoided through reasonable efforts. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 840, 100 P.3d 791 (2004). As our Supreme Court stated:

---

[6] First-Citizens advances several arguments that are foreclosed because the trial court properly found that the parties intended a single enforceable contract. Because substantial evidence supports these findings, and there was a single enforceable contract, we decline to further address these arguments. The bedrock of First-Citizens' arguments is that the amendments are separate and independent contracts. But each amendment lacks the essential terms necessary to form an independent contract. Accordingly, we reject First-Citizens' repeated and related arguments that the amendments constituted independent contracts.

10

"A wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him. If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen."

*Labriola*, 152 Wn.2d at 840 (quoting *Hogland v. Klein*, 49 Wn.2d 216, 221, 298 P.2d 1099 (1956)). The effort to mitigate need only appear reasonable and timely in the context of the time in which the decision was made. *Bernsen v. Big Bend Elec. Coop., Inc.*, 68 Wn. App. 427, 435, 842 P.2d 1047 (1993).

First-Citizens asserts that G&O's evidence provided no reasonable justification for continuing to work after Winlock stopped paying. But that assertion is incorrect. G&O understood that, as lots sold, Winlock would have revenue to pay its contractors, including G&O. The trial court's finding that G&O continued to work to avoid abandoning the project and leaving the properties unsellable, which would have harmed G&O is supported by substantial evidence. The good working relationship between G&O and Winlock assured G&O that Winlock was working on financing and that it would eventually pay G&O.

Next, First-Citizens suggests other actions that G&O could have taken instead of continuing to work, and it asserts that G&O made a conscious decision to assume a risk of nonpayment. But the doctrine of mitigation protects entities like G&O that are placed in a position with a probability of loss. *Labriola*, 152 Wn.2d at 840. Here, G&O's choice to continue working was not unreasonable under the circumstances it faced. First-Citizens does not provide authority supporting its argument that the trial court erred in finding that G&O acted reasonably under the circumstances. Instead, it reasserts the facts and the arguments it relied on

11

at trial. We decline to address arguments unsupported by citation to authority or argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

First-Citizens also challenges finding 25, which provides, "There is a failure of proof on all of FIRST CITIZEN[S'] affirmative defenses and claims of setoff." 8 Clerk's Papers (CP) at 1242. First-Citizens' affirmative defenses included laches, failure to mitigate, and statute of limitations. Finding 25 is a conclusion of law that we review de novo. *Sunnyside*, 149 Wn.2d at 880. But First-Citizens presents no argument on appeal regarding laches and the statute of limitations and First-Citizens' arguments regarding the failure to mitigate are not persuasive. We do not consider arguments unsupported by citation to authority or argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

## V. FIRST-CITIZENS' REQUEST FOR AN OFFSET

First-Citizens next challenges findings 23 and 24, the trial court's findings that G&O acted reasonably in agreeing to release its lien on lots 7, 18 and tract A for a $4,000 payment from Grand Prairie Plaza LLC and that G&O acted reasonably in deciding not to lien Rockmann Development's lots 1, 2, and 3 of phase one. First-Citizens argues that the trial court erroneously denied its request for an offset based on G&O's failure to include these lots in its lien foreclosure action.

An offset is an equitable remedy to ensure that a plaintiff does not recover from two defendants for the same damage. *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 702, 9 P.3d 898 (2000). We review a trial court's decision to grant an offset for abuse of discretion, and a court abuses its discretion if its decision is not based on tenable grounds or tenable reasons. *Eagle Point*, 102 Wn. App. at 701.

12

That G&O released its lien on these lots is not disputed. First-Citizens challenges the denial of an offset for their exclusion from the lien foreclosure action. The trial court denied the offset because, "[n]o authority has been cited by FIRST-CITIZEN'S [sic] requiring that a lien be asserted against 100% of the property on which services were provided under RCW 60.04." CP at 1242. First-Citizens does not show how the trial court abused its discretion and, on appeal, has not provided legal authority supporting its assertion that it was entitled to an offset; thus we do not consider its argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

## VI. ATTORNEY FEES

Finally, G&O requests attorney fees as the prevailing party under RCW 60.04.181(3). A party can recover reasonable attorney fees or expenses if applicable law grants the party that right and the party devotes a section of its opening brief to its request. RAP 18.1(a), (b). RCW 60.04.181(3) provides that the court "may allow the prevailing party in the action . . . as part of the costs of the action . . . attorneys' fees and necessary expenses incurred by the attorney in the superior court, [C]ourt of [A]ppeals, [S]upreme [C]ourt, or arbitration, as the court . . . deems reasonable." Because G&O properly requested fees in its opening brief, chapter 60.04 RCW allows attorney fees, and G&O prevails on appeal, it is entitled to its attorney fees and necessary expenses as determined upon its compliance with RAP 18.1.[7]

---

[7] G&O argues that we should apply a multiplier to the attorney fee award. But the issue of whether a multiplier applies is not properly before us. Instead, according to RAP 18.1(d), within 10 days of the filing of this decision, G&O must serve and file an affidavit detailing the expenses incurred and the services counsel performed. First-Citizens then has 10 days to object and a commissioner or clerk will determine the award, after a hearing if necessary. RAP 18.1(e)-(f). If either party objects to the award, it can file an objection under RAP 18.1(g).

No. 42796-6-II

We affirm the trial court's rulings and award fees and costs to G&O as the prevailing party.

Johanson, J.

We concur:

Worswick, C.J.

Van Deren, J.P.T.

14