# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TAZMINA VERJEE-VAN and BRIAN VAN,<br><br>    Appellants,<br><br>    v.<br><br>PIERCE COUNTY, acting through its Department of Planning and Land Services and Office of the Pierce County Hearing Examiner,<br><br>    Respondents. | No. 49329-2-II<br>(Linked with No. 48947-3-II)<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — Tazmina Verjee-Van and Brian Van (the Vans) appeal the superior court's denial of their petition under the Land Use Petition Act (LUPA), chapter 36.70A RCW. In their petition, the Vans challenge conditions imposed by Pierce County on a shoreline permit exemption issued for the Vans' pier. The Vans argue that: (1) the hearing examiner erred by determining that the legality of a neighboring pier owned by Neil Borgert was not reviewable under the doctrine of finality and (2) the conditions imposed on their shoreline permit exemption amount to an unconstitutional taking. In addition to the County, Borgert and Dan and Phyllis Abercrombie, adjacent property owners on either side of the Vans, are respondents arguing in favor of the County's exemption conditions. Pierce County, Borgert, and Dan and Phyllis Abercrombie also request attorney fees and costs on appeal.

We affirm the superior court and we award reasonable attorney fees and costs to Pierce County, Borgert, and the Abercrombies.

No. 49329-2-II
(Linked w/ No. 48947-3-II

FACTS

A.     Borgert Pier

The Vans own property on the shoreline of Lake Tapps, which is next to a lot previously owned by Kelly Winne and Julie Helmka-Winne (the Winnes) and which is presently owned by Neil Borgert. At some point before or during April 1998, the Winnes constructed a pier on their property without acquiring a shoreline exemption from Pierce County or submitting an application for a permit. On April 18, 1998, Helmka-Winne submitted a shoreline exemption request for the pier as constructed. On April 20, Helmka-Winne submitted an application for a building permit for the pier, and on July 9, the County issued a building permit to the Winnes for the pier as built. The County also approved the Winnes' shoreline exemption request on June 13, 2001. The building permit and shoreline exemption were never appealed. In December 2003, Borgert purchased the property from the Winnes.

B.     First Hearing Examiner Ruling AA7-14

On May 23, 2014, the Vans submitted an application to the Pierce County Planning and Land Services Department (County) for an exemption from the requirement for a shoreline substantial development permit to construct a 30 foot long by 5 foot wide pier and access ramp on Lake Tapps. On September 5, the County denied the request, stating that the Vans' proposed pier "was closer than ten feet from a side property line extended at a right angle to the shoreline," and therefore was "not exempt from the [permit] requirement . . . per Pierce County Code (PCC) . . . [c]hapter 20.56 Piers and Docks." Clerk's Papers (CP) at 382. On September 18, the Vans appealed the County's denial of their requested exemption to the County's hearing examiner (Examiner) under number AA7-14.

2

On March 18, 2015, the Examiner held a hearing and took testimony regarding the denial of the Vans' requested exemption. The Vans argued that the County's method of measuring an extended property line by "continu[ing] the [subject] property line to the bulkhead and then waterward from the bulkhead at an angle of 90 degrees," was inappropriate as applied to their property because it was located on a cove, or curved shoreline, as opposed to a straight shoreline. CP at 255, 257. On April 7, the Examiner ruled that the County's method of determining side property lines conflicted with state precedent and granted the Vans' appeal with regard to the side property line dispute. The Examiner also concluded that "insufficient evidence was presented to determine whether the pier satisfies all the criteria for an exemption as set forth in the SMA [Shoreline Management Act], WAC [Washington Administrative Code], SMP [Shoreline Master Program], and SUR [Shoreline Management Use Regulations]. Therefore no decision is made thereon." CP at 264. No party appealed this decision.

C.     Second Hearing Examiner Ruling AA9-15

On April 17, 2015, Mike Erkkinen, senior planner for the County, e-mailed the Vans stating that "insufficient evidence has been presented in this matter for staff to determine if the proposed pier meets provisions in the [SMP] and [SUR]," and asked the Vans to provide "an updated site plan." CP at 369. On May 1, the Vans' attorney sent a letter to the county prosecutor's office replying:

> Given that the hearing examiner ruled that the County's decision was clearly erroneous, no other conditions exist that the Vans need to meet to satisfy the exemption requirements, and no other property owner has been required to do what Mr. Erkkinen seeks to require of the Vans. As such, the Vans will not be submitting any additional material for their pier as all of the material requested was previously provided in their pier application that was originally submitted to PALS.

3

CP at 368.

On May 3, the County received a report that a pier was being constructed on the Vans'

property. On May 11, the County conducted a site visit of the Vans' property and found that a

pier resembling the Vans' proposed pier had been constructed on the property. This pier,

however, was 34 feet long rather than the proposed 30 feet. On June 30, the County granted the

Vans a conditional exemption from the SMA substantial development permit requirement,

subject to the following requirements:

> 1. The pier length shall be shortened from the proposed 30 feet to a length that provides a minimum separation of 20 feet from the piers associated with the adjacent waterfront properties.
>
> 2. All portions of the recently constructed pier that are less than 20 feet from an adjacent pier or that are more than 30 feet in length shall be removed no later than 30 days from the date of this Exemption.

CP at 250. At the time of the site visit, the Vans' pier was 9 feet 3 inches from the Borgert pier.

On July 13, the Vans appealed the County's conditional exemption to the Examiner. This

administrative appeal was identified as AA9-15.

On November 18, 2015, the Examiner held a hearing and took testimony regarding the

denial of the Vans' conditional exemption. At the hearing, Erkkinen testified that "a 20-foot

separation [between piers] is necessary to provide ingress and egress for both property owners."

CP at 211. On December 14, the Examiner issued a decision upholding the two conditions in the

County's conditional shoreline exemption.

First, the Examiner rejected the Vans' argument that because the Borgert pier was

illegally constructed, they were not required to maintain the 20-foot separation from it. The

Examiner's basis for this ruling was expressed in finding 14, which states:

4

14.  Appellants cannot now challenge the legality of the [pier] located on the Borgert parcel.  Following passage of the Land Use Petition Act (LUPA) by the Washington State Legislature, our Washington [State] Supreme Court has required appeals of land use actions to comply with the time limits set forth in LUPA.  The court has consistently held that legal challenges to land use action must be brought within the LUPA statute of limitations of 21 days (except in shoreline cases appeals to the Shorelines Hearings Board must be brought within 30 days).  In Department of Ecology v. City of Spokane Valley, et. al., 167 Wn. App. 952 (2012), our Court of Appeals held that the granting or denial of an exemption from the substantial development permit process may be challenged under LUPA as the Department of Ecology did in that case.  Since no challenges to the Borgert Dock were filed during the LUPA appeal period of 21 days, our courts and LUPA consider the exemption approval a final land use decision.  In Chelan County v. Nykreim, 146 Wn.2d 904 (2002), our Supreme Court quoted from its decision in Wenatchee Sportsman Assn. v. Chelan County, 141 Wn.2d 175 (2002), as follows:

> This court has also recognized a strong public policy supporting administrative finality in land use decisions.  In fact, this court has stated that "[i]f there were not finality [in land use decisions], no owner of land would ever be safe in proceeding in development of his property.  To make an exception . . . would defeat the purpose and policy of the law in making a definite time limit. (pp. 931, 932).

Such is especially true in the present case where Mr. Borgert purchased his parcel with the dock permitted and built (except for SEPA review).  The Court in Nykreim continued:

> To allow Respondents to challenge a land use decision beyond the statutory period of 21 days is inconsistent with the Legislature's declared purpose of enacting LUPA.  Leaving land use decisions open to reconsideration long after the decisions are finalized places property owners in a precarious position and undermines the Legislature's intent to provide expedited appeal procedures in a consistent, predictable and timely manner. (p. 933).

The Supreme Court then extended LUPA's scope and review to include ministerial decisions such as building permits that require no notice whatsoever:

> Building permits are subject to judicial review under LUPA.  Historically, actions on building permits have been characterized by this court as ministerial determinations, which answers the question whether LUPA applies to ministerial land use decisions.  136 Wn.2d at 929.

5

> See also Durland v. San Juan County, 182 Wn.2d 55 (2014), wherein the court prohibited a challenge to San Juan County's issuance of a building permit for a garage addition. In that case petitioners did not receive notice of the building permit until subsequent to the expiration of the administrative appeals period. Furthermore, decisions interpreting LUPA hold that a structure approved for construction under a faulty building permit or other permit becomes a valid, legal use and not a nonconforming use. In issuing the exemption [to the Vans], PALS had to consider the Borgert [pier] as a legal, permitted structure.

CP at 220-21.

Second, the Examiner determined that the condition requiring a 20-foot separation between adjacent piers was consistent with SUR and SMA policies, approved by the Pierce County legislative authority, and properly addressed concerns regarding the safe ingress and egress of watercraft. The Examiner denied the Vans' appeal, holding that they must "strictly comply with the two conditions imposed on the [SMA permit] exemption" by the County. CP at 225.

D.    LUPA Petition

On January 4, 2016, the Vans filed a LUPA petition in superior court, appealing the Examiner's denial of their appeal of the County's June 30, 2015 administrative decision granting the conditional shoreline exemption. On June 24, the superior court heard argument in this case and, on July 26, filed its decision denying the Vans' LUPA petition, stating in part:

> The legality of [t]he Borgert [p]ier, as being built without valid permits, is central to [t]he Vans argument. If [t]he Borgert's pier is illegal, then all decisions from the [E]xaminer must fall as to [t]he Vans' pier. This Court finds [t]he Vans argument, as to the legality of the [Borgert pier], is another attempt to raise an issue which has already been ruled upon by the Court in denying [the Vans'] attempt to obtain a writ of mandamus (Court's decision filed March 30, 2016). The subject matter of the writ was to challenge the legality of the County's action in allowing the Borgert's [pier] to be built and remain in its current location.

6

The Court's decision of March 30, 2016, is under appeal, but until an appellate court rules, the Court's March 30, 2016, decision still stands.

. . . .

The two conditions imposed by Mr. Erkkinen were not unreasonable and ensured unobstructed moorage space for each property owner. [The Vans] argue that [t]he Borgert's [pier] is in fact illegal and interferes with the lateral line case law of Washington State.

Once again, the Court has previously ruled on the legality of the Borgert's pier and has ruled that [the Vans] did not timely file any action, under [LUPA], in contesting its construction. The legality of Borgert's [pier] is not an issue before this court.

CP at 863-66.

On August 19, the Vans appealed the superior court's July 26, 2016 denial of their LUPA petition.

ANALYSIS

I. STANDARD OF REVIEW

LUPA governs judicial review of land use decisions. RCW 36.70C.030. Under RCW 36.70C.020, the action here on appeal is a land use decision. Under LUPA, we may grant relief from a land use decision only if the party seeking relief has shown:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.76C.130(1). We review rulings under RCW 36.70C.130 de novo. *Durland v. San Juan County*, 182 Wn.2d 55, 64, 340 P.3d 191 (2014).

The Vans assign error to the Examiner's findings of fact 8, 10, 13, 14, and 15 and conclusions of law 4, 6, 8, and 9. We review whether substantial evidence supports the findings of fact and whether those findings support the conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Properties, LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013). Substantial evidence is evidence sufficient to persuade a rational fair-minded person that the premise is true. *Id*. at 341-42. We view the evidence in the light most favorable to the prevailing party below, here the County. *Id*. at 342. We further defer to the finder of fact on issues of conflicting evidence, witness credibility, and the persuasiveness of the evidence. *Id*. The party challenging a finding of fact bears the burden to show that it is not supported by the record. *Id*. We review conclusions of law de novo. *Id*.

Our Supreme Court has also made clear that it is not the appellate court's "obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings." *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). We have previously held that a party waives its challenge to a finding of fact by failing to properly assign error to a finding. *In re Muller*, 197 Wn. App. at 487. Although the Vans offer some argument associated with their challenged findings of fact and conclusions of law, their arguments consist of conclusory assertions and citation to the entire Examiner ruling for AA9-15. Br. of Appellant at 7-10. We do not consider conclusory arguments unsupported by citation to authority or rational argument. *State v. Mason*, 170 Wn.

8

App. 375, 384, 285, P.3d 154 (2012). Therefore, we do not independently address the Vans'

challenges to findings of fact 8, 10, 13, and 15 and conclusions of law 4, 6, 8, and 9. However,

we address below the Vans' challenge to finding of fact 14 as it relates to their arguments about

finality.

## II. FINALITY

A.     Final Decision

The Vans contend that there has never been a final administrative decision regarding the

Borgert pier, and therefore the doctrine of finality does not apply in this case. If the Vans are

correct in this regard, then they may argue in this appeal that the Borgert pier is illegal and that

the conditional shoreline exemption is therefore without legal basis. We disagree with the Vans'

assertion.

In order to appeal an administrative decision under PCC 1.22.090, there must be a final

decision. Agency action is final "'when it imposes an obligation, denies a right, or fixes a legal

relationship as a consummation of the administrative process.'" *Evergreen Washington*

*Healthcare Frontier LLC v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 431, 449, 287 P.3d 40

(2012) (internal citations omitted) (quoting *Wells Fargo Bank, N.A. v. Dep't of Revenue*, 166

Wn. App. 342, 356, 271 P.3d 268 (2012)). Our Supreme Court has stated that "[a] final agency

action 'implies a definitive act of the agency, action which is binding until and unless it is set

aside by a court.'" *Jones v. Dep't of Health*, 170 Wn.2d 338, 357, 242 P.3d 825 (2010) (quoting

Charles H. Koch, Jr., ADMINISTRATIVE LAW AND PRACTICE § 13.20, at 335 (2d ed. 1997)).

In this case, the 2001 approval of the shoreline exemption for the Borgert pier constituted

a final agency action that could have been appealed. The County approved a shoreline

9

exemption on June 13, 2001 for what would eventually be Borgert's "5 x 24 as built [pier]." CP at 52. The County's approval of the exemption request indicates that the County determined that the pier comported with applicable county regulations. The effect of a shoreline exemption is to relieve the applicant of any obligation to obtain a shoreline substantial development permit for the proposal. PCC 20.76.030(A)-(B). Because the 2001 shoreline exemption communicated a definitive act of an agency fixing a legal relationship, it was a final administrative action that Verjee-Van could have appealed.

B.    Doctrine of Finality

Under the doctrine of finality, failure to appeal a final decision subject to LUPA will preclude further review. In *Chelan County v. Nykreim*, the County attempted to revoke land use decisions 14 months after they had been made because they had been erroneously approved. 146 Wn.2d 904, 914-15, 917-18, 52 P.3d 1 (2002). The Supreme Court held that even if the original land use decision was erroneous, the judicial "policy of finality of land use decisions," and the provisions of LUPA precluded further review of that decision through a declaratory judgment action after the deadline for an appeal under LUPA had passed. *Id*. at 932-33. The court explained that it has:

> [R]ecognized a strong public policy supporting administrative finality in land use decisions. In fact, this court has stated that "if there were not finality [in land use decisions], no owner of land would ever be safe in proceeding with development of his property. . . . To make an exception . . . would completely defeat the purpose and policy of . . . making a definite time limit."

*Id*. at 931-32 (alterations in original) (quoting *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 181-82, 4 P.3d 123 (2000)).

10

A final local government decision on a request for a shoreline exemption may be challenged under LUPA. *Dep't of Ecology v. City of Spokane Valley*, 167 Wn. App. 952, 964, 275 P.3d 367 (2012); RCW 36.70C.020(2)(a). Consequently, the same policies favoring finality in *Nykreim* are also at play in this setting.

The land use decision regarding the Borgert pier may not be reviewed in the absence of a timely appeal under LUPA because the County's decision on shoreline exemption was a final agency decision. The Vans did not appeal the shoreline exemption permit regarding the Borgert pier. Thus, the Examiner's finding of fact 14 that "[a]ppellants cannot now challenge the legality of the [pier] located on the Borgert parcel," is supported by substantial evidence because a final decision was in fact made, as discussed above. To the extent this finding draws a legal conclusion under the doctrine of finality, it is fully consistent with *Nykreim* and LUPA, as discussed above. Consequently, the Examiner did not err by concluding that under the doctrine of finality, the Borgert pier must be deemed legal.

The Vans' principal challenge to the condition of the shoreline exemption requiring a minimum separation from adjacent piers is that the Borgert pier is illegal. However, under the doctrine of finality the Borgert pier must be deemed legal and, thus, the Vans' remaining challenges to the exemption conditions are those in their challenges to conclusions of law 4, 6, 8, and 9. For the reasons set out above, they have waived those challenges. Therefore, we hold that the Examiner properly determined that the 20-foot pier separation condition was appropriate based on the policy concerns relating to safe use of watercraft and navigability.

C.      Res Judicata

Borgert and the Abercrombies also argue that the Vans' argument regarding the legality

of the Borgert pier is barred under the doctrine of res judicata.  However, our decision in the

linked case, *Tazmina Verjee-Van v. Pierce County*, No. 48947-3-II, slip op. at 2017 WL 6603662

(Wash. Ct. App. Dec. 27, 2017) (unpublished) and our analysis above in the present appeal

establish the legality of the Borgert pier under the doctrine of finality.  Therefore, it is not

necessary to reach the res judicata argument raised by Borgert and the Abercrombies.

III. REGULATORY TAKINGS

The Vans also claim that the County's requirement to maintain a 20-foot setback between

their pier and neighboring piers amounts to an unconstitutional regulatory taking.  We disagree.

The Fifth Amendment to the United States Constitution provides that private property

shall not be taken for public use without just compensation.  *Burton v. Clark County*, 91 Wn.

App. 505, 515, 958 P.2d 343 (1998).  Similarly, the Washington Constitution article I, section 16

states that "[n]o private property shall be taken or damaged for public . . . use without just

compensation having been first made."  A regulation of the use of land may result in a

constitutional taking.  *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 329, 87 P.2d 907

(1990) (citing *Orion Corp. v. State*, 109 Wn.2d 621, 747 P.2d 1062 (1987)).

The Vans argue that the requirement to maintain a 20-foot distance between piers

constitutes a regulatory taking, relying on our opinion in *Isla Verde International Holdings., Inc.*

*v. City of Camas*, 99 Wn. App. 127, 990 P.2d 429 (1999).  However, *Isla Verde* concerned an

ordinance that required a property developer to set aside a portion of its property as open space

to preserve areas for wildlife and recreational purposes.  99 Wn. App. at 138-39.  We

12

characterized that ordinance as an "exaction," because it required a private party "to dedicate a significant portion of its property for a public benefit." 99 Wn. App. at 138-39. The state Supreme Court affirmed, but on other grounds. It concluded that the open space condition violated RCW 82.02.020 and did not reach arguments on its constitutionality. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 745, 49 P.3d 867 (2002).

In the present appeal, the Vans do not contend that they have been required to set aside part of their land for the public's use, but rather that the County's regulations have deprived them of the use of part of their property. Division One of this court has explained that a regulatory taking occurs when "'government actions do not encroach upon or occupy the property yet still affect and limit its use to such an extent that a taking occurs.'" *Berst v. Snohomish County*, 114 Wn. App. 245, 255-56, 57 P.3d 273 (2002) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001)). Therefore, by arguing that the County has engaged in a taking by operation of its regulations, the Vans have raised a regulatory taking claim, not an exaction claim, and their reliance on *Isla Verde* is misplaced.[1]

In *Guimont v. Clarke*, the Supreme Court set out the showing needed to sustain a regulatory taking claim. 121 Wn.2d 586, 854 P.2d 1 (1993). The court noted that regulatory taking claims are subject to two threshold inquiries. *Id*. at 594-95, 600-01. First, a court considers "whether the regulation denies the owner a fundamental attribute of ownership," such as the right to possess, exclude others, dispose of property, or "make *some* economically viable

---

[1] Furthermore, the Vans confirmed that they were alleging a regulatory taking in this appeal at oral argument. Wash. Court of Appeals, *Verjee-Van v. Pierce County*, No. 49329-2-II, *oral argument* (July 6, 2017), at 8 min., 30 seconds (on file with the court).

use of the property." *Id*. at 602. Second, "if the regulation does not implicate fundamental attributes of ownership, the court will proceed to the next threshold inquiry, analyzing whether the regulation goes beyond preventing a public harm to producing a public benefit." *Id*. at 601. The court reasoned that "if the regulation either goes beyond preventing a public harm to producing a public benefit, or infringes upon a fundamental attribute of property ownership, further takings analysis is necessary." *Id*. at 595. "If the regulation does not destroy a fundamental attribute of ownership and does no more than protect the public health, safety, and welfare, then the regulation is not subject to a takings challenge." *Robinson v. City of Seattle*, 119 Wn.2d 34, 50, 830 P.2d 318 (1992).

The Vans assert that the County's conditions on their permit exemption deprive them of their right to enjoy their property and that they are harmed because "the value of their property is less than the value of their neighbor[], Neil Borgert." Br. of Appellant at 21-22. In considering this assertion, we note that if the Vans associate the lack of enjoyment of their property with the absence of a pier, the County's conditions on the Vans' permit exemption do not forbid the Vans from constructing a pier, but only one that violates certain conditions. Therefore, the Vans may still construct and enjoy a pier on their property. Additionally, the right to enjoy one's property is not unlimited. Division One of this court has explained that "[p]roperty owners do not have a right to use and enjoy their property so as to create a nuisance or interfere with the general welfare of the community" *In re Property Located at 14255 53rd Ave., S., Tukwila, King County, Washington*, 120 Wn. App. 737, 748, 86 P.3d 222 (2004).

In this case, the Vans have not satisfied either of the threshold inquiries under *Guimont*. Turning to the first threshold inquiry, the Vans make no argument that the County's decision has

14

somehow interfered with their rights to possess their property, dispose of their property or exclude others from it. In addition, the Vans provide no citation to the record to demonstrate the effect of this regulatory requirement on the value of their property. Importantly, even if the Vans had provided evidence of an economic harm, the first threshold inquiry under *Guimont* asks whether the regulation denies the owner the right to make some economically viable use of the property. *Guimont*, 121 Wn.2d at 601; *see also Lucas v. South Carolina Coastal County*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). Thus, in order to meet the first prong of the *Guimont* threshold analysis under a theory of economic harm, the Vans must demonstrate that the regulatory requirement "destroy[s] all economically viable use[s]" of their property. *Jones v. King County*, 74 Wn. App. 467, 478, 874 P.2d 853 (1994). At oral argument, the Vans conceded that the challenged regulation did not deprive them of all reasonable economic use of their property. Wash. Court of Appeals, *Verjee-Van v. Pierce County*, No. 49329-2-II, *oral argument* (July 6, 2017), at 10 min, 45 seconds (on file with the court). Thus, the Vans have failed to make the first threshold showing.

As to the second prong of the *Guimont* threshold analysis, the record demonstrates that the regulation at issue is intended to promote public safety and welfare. At the hearing before the Examiner in the administrative appeal AA9-15, Erkkinen testified that the 20-foot separation requirement was imposed to allow for adequate ingress, egress, and mooring at both the Vans' and Borgert piers. The concern for sufficient clearance permitting ingress and egress serves public safety by avoiding collisions between watercraft. Similarly, Erkinnen's comments regarding mooring touch upon general welfare concerns: allowing both property owners to enjoy full use of their structures. Therefore, we hold that the Vans have not established either

15

prong of the *Guimont* threshold analysis, and consequently the Vans' regulatory taking claim fails.

## IV. ATTORNEY FEES

The County, Borgert, and the Abercrombies request an award of reasonable attorney fees and costs on appeal as the prevailing parties. We hold that they are entitled to that award.

Under RCW 4.84.370, a prevailing party on appeal of a land use decision is entitled to an award of reasonable attorney fees and costs if that party was the prevailing or substantially prevailing party at the administrative level and in all prior judicial proceedings. In this case, the County prevailed before the Examiner and in superior court by defending its conditional permit exemption. Therefore, we hold that the County is entitled to an award of reasonable attorney fees and costs as the prevailing party on appeal.

Further, Borgert and the Abercrombies, as joint respondents, prevailed on the issue of whether the doctrine of finality applies to the Borgert pier at each stage of the litigation. *See* CP at 230. Our Supreme Court has explained that "[a] 'prevailing party' is any party that received some judgment in its favor." *Guillen v. Contreras*, 169 Wn.2d 769, 775, 238 P.3d 1168 (2010). The court further reasoned that "[i]f neither party completely prevails, the court must decide which, if either substantially prevailed," based on "the extent of the relief afforded [to] the parties." *Id*. (citing *Riss v. Angel*, 131 Wn.2d 612, 663-64, 934 P.2d 669 (1997)). Therefore, because Borgert and the Abercrombies prevailed on the issue of finality, we hold that they are also entitled to an award of reasonable attorney fees and costs as prevailing parties on appeal.

16

No. 49329-2-II
(Linked w/ No. 48947-3-II)

CONCLUSION

We affirm the superior court and award reasonable attorney fees and costs on appeal to

the County, Borgert, and the Abercrombies.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

Bjorgen, C.J.

We concur:

Melnick, J.

Sutton, J.

17