**FILED**
**JULY 2, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re: | ) | No. 35926-3-III |
| | ) | |
| BATES DRUG STORES, INC., d/b/a | ) | |
| BATES PHARMACY AND MEDICAL | ) | |
| SUPPLY, a Washington corporation. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, C.J. — Cardinal Health appeals the trial court's order

determining that its security interest in proceeds from the sale of various assets is junior to

Banner Bank's security interest. Specifically, the assets sold were contracts, books,

records, and intangibles.

We construe Banner Bank's security interest in intangibles as intangibles "arising

out of . . . disposition"[1] of inventory, accounts, and equipment. We construe Banner

Bank's security interest in records as records "relating to" inventory, accounts, and

equipment. We remand for the trial court to enter appropriate findings in this regard.

---

[1] Clerk's Papers at 92.

No. 35926-3-III
*In re Bates Drug Stores, Inc.*

FACTS

In 2004, Cardinal Health 110, Inc., began providing pharmaceutical products on credit to Bates Drug Stores, Inc. (Bates Drug). To secure credit, Bates Drug gave Cardinal Health a security interest in "fixtures, goods, machinery, equipment, vehicles, inventory, leasehold improvements, accounts, accounts receivable, . . . contract rights, general intangibles (including without limitation . . . data bases, software and software systems, licenses, franchises, customer lists, goodwill . . .) [and] all proceeds or products of any of the foregoing . . . ." Clerks Papers (CP) at 167. Cardinal Health perfected its security interest by filing a UCC Financing Statement on January 26, 2012.

In 2012, Banner Bank's predecessor began extending credit to Bates Drug. To secure credit, Bates Drug gave Banner Bank's predecessor a security interest in collateral, and defined the "collateral" as:

> [T]he following described property, whether now owned or hereafter acquired . . .
> All Inventory, Accounts and Equipment
> In addition, the word "Collateral" also includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
> . . . .
> (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, *arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.*
> . . . .

2

No. 35926-3-III
*In re Bates Drug Stores, Inc.*

        (E)     All records and data *relating to any of the property described in this Collateral section*, [regardless of form], together with all of Grantor's right . . . to all computer software required to utilize . . . any such records or data on electronic media.

CP at 92 (emphasis added). Banner Bank's predecessor perfected its security interest by filing a UCC Financing Statement on October 10, 2012.

In 2014, Cardinal Health entered into a subordination agreement with Banner Bank's predecessor. The agreement provides in relevant part:

        WHEREAS, [Cardinal Health] has extended credit to Bates Drug Stores, Inc. ("Borrower") secured by certain personal property of Borrower, including, but not limited to all assets of Borrower, as more particularly described in and as evidenced by [Cardinal Health's financing statement] filed on January 26, 2012, and all amendments thereto and continuations thereof (the "UCC Filing");
    . . . .
        WHEREAS, to induce Bank to continue to extend credit to Borrower, [Cardinal Health] is willing to subordinate its security interest in the Borrower's assets, as set forth in the UCC Filing, to the security interest of Bank in the same assets, on the terms and conditions set forth herein.
    . . . .
        1.     [Cardinal Health's] security interest in Borrower's assets . . . shall be and is hereby declared subordinate, inferior and junior in priority to the security interest of Bank in Borrower's assets.

CP at 73.

Bates Drug could not pay its creditors. On May 18, 2017, a petition for receivership was filed for Bates Drug. That same day, an order was entered appointing Barry Davidson as the general receiver.

3

On June 8, 2017, a contested hearing was held to authorize the sale of Bates Drug's assets. Orders were subsequently issued authorizing the sale of certain assets to Geneva Woods Pharmacy (Geneva Woods) and to Sixth Avenue Medical Building Pharmacy, Inc. (Sixth Avenue Medical).

On June 20, 2017, Mr. Davidson sent an e-mail reporting the status of the two sales. The e-mail valued the "accounts" purchased by Geneva Woods at $202,500, and the "inventory" purchased by Geneva Woods at $12,352. CP at 106. The e-mail also valued the "accounts" purchased by Sixth Avenue Medical at $75,000, and the "inventory" purchased by Sixth Avenue Medical as somewhere between $35,187 and $42,650. CP at 106.

On August 1, 2017, Mr. Davidson filed the "Asset Purchase Agreement," a report that differed from his e-mail description of the types of assets purchased by Geneva Woods. The report described the assets and amounts as $202,500 for "Contracts, Books and Records, and Intangibles," and an estimated $50,000 for five percent of gross revenue for the first five months following closing. CP at 405.

On August 8, 2017, Banner Bank filed a motion to determine priority in the proceeds gathered by the receiver. Cardinal Health was the only responding creditor. It

asserted that Banner Bank did not have a security interest in the proceeds relating to

Geneva Woods' $202,500 payment for contracts, books, records, and general intangibles.

On August 25, 2017, the trial court heard argument on Banner Bank's motion. Mr.

Davidson also was present. In the midst of the parties' oral arguments, the trial court

questioned Mr. Davidson:

> THE COURT: I want to frame this as holistic as I can. Do you think referring to what was sold as general intangibles was a mischaracterization or error in the asset purchase agreement?
>
> MR. DAVIDSON: No. I think it was — I think it was accurate.
>
> . . . [W]hen this matter came across my desk, I'm looking at communications and, you know, there's references to customer accounts. And my thoughts turned to, you know, accounts receivable. And it developed that accounts receivable were not being sold. *The accounts receivable were not what the buyers were interested in. They were basically buying the business opportunity to continue servicing the customer base. And the long-term care business was sold to Geneva Woods* and the pharmacy business was sold to 6th Avenue. And that was done very deliberately. *And there was some inventory sold separately and it was identified as inventory.* I believe there was allocation of dollars towards that.
>
> I did look at what I could find to the extent it was really relevant to what I was doing as to the nature of customer lists, customer records as general intangibles or something else. Frankly, I found it interesting under Cardinal Health's security interest . . . there's a long parenthetical and it covers a lot of different asset categories, but in that asset category is customer list. *So to the extent it was relevant to what I was doing, I . . . characterized these customer lists, customer records, contact information as general intangibles. Certainly, the receivables were specifically called out and excluded. So, no, I don't think that was incorrectly characterized in the asset purchase agreement.*

5

Report of Proceedings at 25-27 (emphasis added).

Mr. Davidson's remarks would have permitted a finding that the $202,500 in dispute was comprised of general intangibles. Nonetheless, the trial court did not enter any finding on that issue. Nor did the trial court determine the scope of Banner Bank's security interest. Instead, the trial court summarily concluded that the security interest of Banner Bank's predecessor "is broad enough to cover all collateral sold by the Receiver in the Geneva Woods and Sixth Avenue transactions." CP at 228.

Cardinal Health appealed to this court.

## ANALYSIS

A. STANDARD OF REVIEW

The trial court did not enter any findings of fact, other than that Banner Bank was entitled to "priority disbursement of the [contested] funds." CP at 346. This finding is actually a conclusion of law. We review mislabeled conclusions of law de novo. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 344, 308 P.3d 791 (2013).

B. BANNER BANK'S SECURITY INTEREST

Mr. Davidson's report describes the $202,500 proceeds as being allocated between "Contracts, Books and Records, and Intangibles." CP at 405.

Banner Bank first argues subsection (C) of its security agreement extends to intangibles. Subsection (C) describes the collateral as including "[a]ll accounts, general intangibles . . . and all other rights, arising out of . . . disposition of any of the property *described in this Collateral section*." CP at 92 (emphasis added). The collateral section describes inventory, accounts, and equipment. We construe Banner Bank's security interest as extending to general intangibles only if they arose from the disposition of inventory, accounts, and equipment. The trial court did not make any findings about what items accounted for the $202,500 in proceeds, and which of those items come within the scope of subsection (C) as we have construed it. We remand for the trial court to make such findings.

Banner Bank next argues that subsection (E) of its security agreement extends to records. Subsection (E) describes the collateral as including "[a]ll records and data *relating to any of the property described in this Collateral section . . . .*" CP at 92 (emphasis added). Again, the collateral section describes inventory, accounts, and equipment. We construe Banner Bank's security interest as extending to records and data only if those records and data relate to inventory, accounts, and equipment. "Relate to" is an inherently factual issue. The trial court did not make any findings about what items accounted for the $202,500 in proceeds, and which of those items come within the scope

of subsection (E) as we have construed it.  We remand for the trial court to make such

findings.

The first numbered paragraph of the parties' subordination agreement subordinates

Cardinal Health's security interest only to the extent Banner Bank has a security interest.

Banner Bank's security interest does not extend to the $202,500 proceeds unless those

proceeds are (1) intangibles that arise out of the disposition of inventory, accounts, or

equipment, or (2) records that relate to inventory, accounts, or equipment.  Because the

trial court did not enter findings in this regard, we remand.[2]

C.    ATTORNEY FEES

Both parties request an award of attorney fees on appeal.  Attorney fees are not

awardable on appeal unless permitted by statute, contract, or a recognized ground of

equity.  *King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*,

188 Wn.2d 618, 625, 398 P.3d 1093 (2017).  The subordination agreement does not

contain an attorney fee clause.  Cardinal Health does not cite any basis for its request for

---

[2] Banner Bank asserts that Cardinal Health's security interest is not properly perfected.  We need not decide this issue.  If Banner Bank has an interest in the $202,500 proceeds, the subordination agreement makes its interest superior to Cardinal Health's interest.  If Banner Bank has no interest in the proceeds, Cardinal Health's secured interest is sufficient for it to be awarded the proceeds.

No. 35926-3-III
*In re Bates Drug Stores, Inc.*

fees. Banner Bank does not cite a sufficient basis for its request for fees. We, therefore, deny the parties' requests.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

9