IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ELIZABETH SETTLES, an individual,

Respondent,

v.

DUSTIN GNEWUCH and JAMIE GNEWUCH, husband and wife,

Appellants.

No. 84431-8-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Dustin and Jamie Gnewuch appeal from a judgment entered against them on claims of bailment, conversion, replevin, and negligence/negligent destruction of personal property. The Gnewuchs broadly challenge the findings of fact and conclusions of law related to the bailment relationship and resulting liability, as well as the award of attorney fees and costs to Elizabeth Settles. Because they fail to demonstrate error, we affirm.

FACTS

In 2007, Dr. Elizabeth Settles purchased a home in Blaine, Washington, which she filled with family heirlooms, antique furniture, unique artwork, and other belongings. Settles, a licensed veterinarian, also maintained several farm animals as pets on the one-acre property—one cat, five goats, six alpacas, and two pot-bellied pigs. In 2014, Settles purchased two veterinary practices, one in California

and the other in New Mexico, that she planned to visit on a monthly basis. Around that time, Settles also left her position with her employer in Washington and separated from her partner, Richard Gnewuch, with whom she had been living. Because the out-of-state veterinary practices required more in-person work than Settles had initially expected, she decided to move to California and live on the property she had purchased there.

The move to California was not intended to be permanent and Settles planned to eventually return to the Blaine house. Before relocating, she came to an oral agreement with Dustin[1] and Jamie Gnewuch in which the parties agreed that the Gnewuchs[2] would lease the Blaine home for $850 per month while Settles was gone. Settles left most of her personal property in the house and paid for a storage unit that the Gnewuchs could use for anything of hers that they did not wish to keep in the home. The farm animals also remained on the property; Settles paid for their food and medical needs and the Gnewuchs agreed to care for them.

In the summer of 2015, Settles moved out of the Blaine house and the Gnewuchs moved in with their three children. The following year, Settles began to have financial difficulties and she filed for bankruptcy in 2017. In 2018, Settles visited the Blaine home and discovered that seven of her farm animals—five alpacas and two goats—had died. The Gnewuchs had not informed her of this. After the bankruptcy closed, Settles took a job in Connecticut and sold the Blaine

---

[1] Dustin is Richard's nephew who had previously lived with Settles and Richard at the Blaine house for approximately one year.

[2] Because several involved parties share the same last name, we refer to them by their first names as needed for clarity. No disrespect is intended.

We use "the Gnewuchs" to refer to the appellants collectively, but this does not include Dustin's uncle, who is not a party to this case.

house to the Whatcom Land Trust (WLT). Settles informed WLT that she was renting the property to the Gnewuchs and WLT allowed them to continue to reside there after the sale.

Once the sale closed, Settles created a list of her personal property in the Blaine house that was to be tagged and shipped to her new home in Connecticut. A representative of WLT went to the Blaine home to help tag items for moving and the Gnewuchs directed her as to which items were to be tagged for removal and which would remain. When the WLT representative arrived at the home, many items had already been packed and placed in the front yard. Settles was not at the Blaine house on the moving day, but she hired professional movers and her friend was also present to assist as he was familiar with her personal property. Ultimately, the moving truck was filled with significant amounts of garbage and items that were broken and/or did not belong to Settles, but had been tagged as if they were her property. Further, many of Settles' personal items were not returned.

In June 2019, Settles filed a complaint against the Gnewuchs in which she presented causes of action for bailment,[3] conversion, replevin, and negligence/negligent destruction of personal property and farm animals. She subsequently filed a motion for a preliminary injunction and sought an order compelling the Gnewuchs to produce numerous listed items of personal property that had not been returned. The trial court granted the motion for preliminary

---

[3] Though Settles made no express bailment claim in the initial complaint, the elements of bailment were pleaded and the trial court granted her later motion to conform the complaint to the evidence presented at trial.

injunction, ordered the Gnewuchs to confirm the personal property that was still in their possession by December 2, 2019, and enjoined them from selling and/or destroying any of the items listed in the order until ownership had been determined. After the Gnewuchs failed to comply with the preliminary injunction, Settles filed a motion for contempt, which the trial court granted. The trial court again ordered production of the personal property at issue and required that any disputed items be placed into storage until ownership was determined.

The case proceeded to a bench trial; the evidence was heard on June 1 and 2, 2022, and the parties made closing arguments on June 6. The trial court found Settles had satisfied her burden of proof for each cause of action with the exception of negligence and bailment to the extent they concerned the farm animals. Accordingly, the court entered judgment against the Gnewuchs and in favor of Settles. The court also awarded attorney fees and costs to Settles pursuant to the replevin statute, RCW 7.64.035, on the basis that the replevin claim was not segregable from the others.

The Gnewuchs timely appealed.

ANALYSIS

I.    Standard of Review and RAP 10.3

"When the trial court has weighed the evidence, our review is limited to determining whether the court's findings are supported by substantial evidence and, if so, whether the findings support the court's conclusions of law and judgment." *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). "The party challenging the finding bears

the burden of showing that it is not supported by substantial evidence," i.e., "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Brin v. Stutzman*, 89 Wn. App. 809, 824, 951 P.2d 291 (1998); *Holland v. Boeing Co.*, 90 Wn.2d 384, 391, 583 P.2d 621 (1978). "This is a deferential standard, which views reasonable inferences in the light most favorable to the prevailing party." *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013). "We also defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence." *Id.* Questions and conclusions of law are reviewed de novo. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

"Unchallenged findings are verities on appeal." *In re Est. of Haviland*, 162 Wn. App. 548, 563, 255 P.3d 854 (2011). Pursuant to RAP 10.3(g), "[a] separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number" and we "will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." Thus, "[i]t is incumbent on counsel to present the court with argument as to why specific findings of the trial court are not supported by the evidence and to cite to the record to support that argument." *In re Est. of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). Along with any unchallenged findings, those that are improperly or inadequately challenged will also be considered verities on appeal. *Id.* at 533. Though the Gnewuchs' opening brief contains an assignment of error section, there are no specific findings challenged therein. Rather than complying with RAP 10.3, the Gnewuchs broadly

seek review of all of the trial court's findings of fact and conclusions of law without specification or supporting argument, as required by the RAPs and controlling case law. We will only review the findings that the Gnewuchs specifically challenge with relevant citations to the record in support of those alleged errors—the rest are verities. *See id.* at 532-33.

II.     Entry of Judgment in Favor of Settles

The Gnewuchs assign error to the trial court's entry of judgment on two bases; first, they allege that "Settles failed to establish that defendants owed her a duty of care," and second, argue that "the record had no direct evidence that defendants harmed" Settles. Neither ground holds merit.

A. Bailment and Duty of Care

The Gnewuchs argue that Settles failed to prove the parties were engaged in a bailment relationship with regard to Settles' personal property such that the Gnewuchs owed her a duty of care. According to the Gnewuchs, the trial court erroneously concluded that an implied bailment for mutual benefit was established when the Gnewuchs moved into Settles' furnished home in Blaine.

"A bailment arises generally when [personal property] is delivered to another for some particular purpose with an express or implied contract to redeliver when the purpose has been fulfilled." *Freeman v. Metro Transmission, Inc.*, 12 Wn. App. 930, 932, 533 P.2d 130 (1975). "Before a consensual bailment of personal property may be said to arise, there must be a change of possession and

an assumption or acceptance of possession by the person claimed to be a bailee." *Collins v. Boeing Co.*, 4 Wn. App. 705, 711, 483 P.2d 1282 (1971).

Gratuitous bailments are those in which the bailor receives the sole benefit; in such cases, the bailee is only obligated to exercise slight care toward the bailed property. *Maitlen v. Hazen*, 9 Wn.2d 113, 123, 113 P.2d 1008 (1941). Nongratuitous bailments, i.e., bailments for mutual benefit, "arise when both parties to the contract receive a benefit flowing from the bailment." *Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 232, 797 P.2d 477 (1990). When the bailment is mutually beneficial, the bailee is held to the standard of "ordinary care under the circumstances." *Chaloupka v. Cyr*, 63 Wn.2d 463, 465-66, 387 P.2d 740 (1963). However, when personal property is "'delivered to a bailee in good condition, and is not returned or is returned damaged, a presumption arises of negligence on the part of the bailee and casts upon [them] the burden of showing the exercise of ordinary care.'" *Id.* at 466 (quoting *Jones v. Warner*, 57 Wn.2d 647, 648, 359 P.2d 160 (1961)).

To determine whether the bailee received a benefit, "the inquiry is not directed to the character or certainty of the benefit or profit; it is whether the bailment was accepted for the purpose of deriving the one or the other." *White v. Burke*, 31 Wn.2d 573, 579, 197 P.2d 1008 (1948). In other words, a bailment is of mutual benefit so long as it was entered into with consideration "'of some value, though slight, or of a nature which may inure to the benefit of the party making the promise.'" *Id.* (quoting *Newhall v. Paige*, 76 Mass. 366, 368 (1858)). "The benefit

to the bailee need not be in the form of cash." *Am. Nursery Prods.,* 115 Wn.2d at 232.

In briefing, the Gnewuchs claim that "Settles simply left belongings behind when she moved out" and insist that any bailment was gratuitous as they received "no benefit." The record shows otherwise. The following findings of fact are unchallenged and are thus verities on appeal:

g. Plaintiff agreed to allow Defendants Dustin Gnewuch and Jamie Gnewuch to rent the Blaine Home while Plaintiff was out-of-the state running her veterinary clinics in California and New Mexico.

h. Defendants agreed to pay $850 in rent per month, which is less than Defendants were paying at their prior residence.

i. Defendants were also not responsible for paying utilities while living in the Blaine Home. Defendants had been charged utilities at their prior residence.

. . .

l. . . .

1. Plaintiff owned the Personal Property before Defendants moved into the Real Property. The Personal Property has significant sentimental value to Plaintiff. Plaintiff never intended to relinquish ownership of the Personal Property to Defendants.

. . .

q. Prior to moving into the Blaine Home, Plaintiff and Mr. Gnewuch discussed the terms of the agreement for Defendants to lease the Blaine Home. In that discussion, Plaintiff told Mr. Gnewuch that she could move all her personal property out of the Blaine Home or Defendants could use her personal property while they were living in the Blaine Home. Mr. Gnewuch wanted to use Plaintiff's personal property during their tenancy, but expressed concern that his children may damage some pieces of Plaintiff's property. Plaintiff agreed to rent a storage unit to which Defendants could move items they did not want to use or thought would be damaged by their children.

r. Upon moving into the Blaine Home, Defendants chose to move a portion of Plaintiff's personal property to storage, thereby benefitting from the use of the remaining property left in their care.

. . .

w. Both parties received a benefit when Defendants moved into the Blaine Home: Defendants paid less for rent and were not responsible to pay utilities at the two-story Blaine Home located on one acre of land. Plaintiff charged Defendants a reduced rent and paid the utilities in exchange for Defendants caring for the Farm Animals and caring for the personal property left in Defendants' sole custody, control, and possession.

As bailees in mutual benefit bailments have a duty to exercise ordinary care, *Chaloupka*, 63 Wn.2d at 465-66, and the trial court applied that standard of care here, phrased in its findings and conclusions as "reasonable care," the only question is whether the unchallenged findings support the conclusion that an implied bailment for mutual benefit was established when the Gnewuchs moved into the Blaine home. They do. Accordingly, the trial court did not err.

B. Proof of Damages

The Gnewuchs challenge the trial court's conclusion of law that "Defendants' failure to use reasonable care proximately caused damages to Plaintiff" for which they are liable. According to the Gnewuchs, "Settles presented a case with no real evidence that supported her claims" and "[t]he record contains no evidence that the Gnewuchs damaged Settles' property." We disagree.

As established, the parties entered into a mutual benefit bailment with regard to Settles' personal property. The rule in Washington as to the "burden of proof in bailment cases where property is lost or damaged while in the bailee's

possession, is that a prima facie case, or presumption, is raised when the bailor shows non-return, loss, damage or destruction to bailed property." *Chaloupka*, 63 Wn.2d at 466. Thus, when personal property is delivered to a bailee and is either returned to the bailor damaged, or not returned at all, courts presume that the bailee was negligent, which means there is a presumption that the bailee breached the duty of care owed to the bailor and proximately caused the damages.[4] *See id.*

While the Gnewuchs appear to contest three underlying findings of fact related to the issue of whether they failed to exercise reasonable care and proximately caused the damages to Settles' personal property, they do not challenge any of the following findings, which are now verities on appeal:

oo. Defendants failed to properly pack fragile items before the movers arrived on Moving Day.

. . .

qq. Defendants tagged items to be moved that were broken and unusable, such as an old greenhouse frame and a broken wheelbarrow.

rr. Defendants also tagged trash for moving, including an old bathtub, TVs Plaintiff did not own, and a dirty mattress, among other items.

ss. Defendants also refused to release certain items on Plaintiffs Property List, such as the outdoor teak furniture set.

tt. Plaintiff purchased the outdoor teak furniture set prior to 2014 and prior to the date Defendants moved into the Blaine Home.

. . .

ccc. Numerous items of Plaintiff's personal property, which were left in the home when she moved out, were damaged or destroyed

---

[4] The elements of negligence include "the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

when the items were carelessly packed by Defendants. These items were in Defendants' sole custody, control, and possession when the personal property was damaged.

ddd. Defendants packed fragile glassware and other fragile items in boxes without additional protective packing, on or before moving day, for a cross-country delivery.

eee. No reasonable person would pack fragile glassware and other fragile items in a box for a cross-country delivery without additional protective packing.

fff. Numerous items of Plaintiff's personal property, which were left in the home when she moved out, were either lost or not returned by Defendants. These items were in Defendants' sole custody, control, and possession when they were lost or not returned.

. . .

iii. Defendants identified no specific item of Plaintiff's property that Richard may have removed from the Blaine Home while Defendants were in the custody, control, and possession of Plaintiff's property.

jjj. The personal property and Farm Animals left by Plaintiff when Defendants moved into the Blaine Home were severely neglected, misused, damaged, or lost.

kkk. Defendants failed to properly care for Ms. Settles' personal property and Farm Animals while Defendants were in the custody, control, and possession of this property during the time Defendants rented the Blaine Home from 2015-2019.

lll. Defendants failed to use reasonable care, or even slight care, as to the use, possession, and protection of Plaintiff's personal property at the Blaine Home while the property was in the custody, control, and possession of Defendants.

Even if we were to ignore the express findings that the Gnewuchs failed to exercise reasonable care when they packed Settles' personal property that resulted in the damages, which establishes both breach and proximate cause, the remaining findings are still sufficient for a presumption of negligence on the part of

the Gnewuchs to arise. *See Chaloupka,* 63 Wn.2d at 466. Because Settles' personal property was delivered to the Gnewuchs when they moved into her fully furnished home, and numerous items were damaged and/or not returned to Settles, there is a presumption of negligence and the burden of proof shifts to the Gnewuchs to show that they exercised due care or that "the loss was caused by burglary, larceny, fire, or other causes which of themselves do not point to negligence on the part of the bailee." *Id.* at 467. It appears the Gnewuchs misunderstand the burden shifting that operates within this procedural framework. Rather than attempting to rebut the presumption, they simply attack the evidence offered by Settles.[5] Because the unchallenged findings support the trial court's conclusion that the Gnewuchs' failure to exercise reasonable care proximately caused the damages to Settles' personal property, the trial court did not err when it entered judgment in favor of Settles.

---

[5] In briefing, the Gnewuchs consistently cite Jamie's testimony as contradicting the judge's findings. However, we do not reweigh the evidence from the trial court. *City of Sunnyside v. Gonzalez*, 188 Wn.2d 600, 612, 398 P.3d 1078 (2017).

Additionally, the relevant test on appeal is to determine whether the findings made by the trial court are properly supported by the evidence, not whether the evidence could support different findings. "Even if there are several reasonable interpretations of the evidence, it is substantial if it reasonably supports the finding." *Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004).

More critically, we will not revisit the trial court's credibility determinations. *Scott's Excavating,* 176 Wn. App. at 342. The trial court expressly found "the testimony of other witnesses, particularly Plaintiff Settles, to carry greater weight than the testimony of Codefendant [Jamie] Gnewuch." Accordingly, argument regarding Jamie's testimony is unavailing in light of the credibility determination of the trial court and the standard of review on appeal.

Finally, while the Gnewuchs assert in their second assignment of error that there existed "no direct evidence that defendants had harmed the plaintiff," they cite no authority to support their contention that direct evidence was required for Settles to prevail in her claims. Not only can circumstantial evidence prove a fact, "circumstantial evidence is as good as direct evidence." *Rogers Potato,* 152 Wn.2d at 391; *see also Presnell v. Safeway Stores, Inc.*, 60 Wn.2d 671, 673, 374 P.2d 939 (1962).

III.    Attorney Fees

    A.  Trial Court Award of Fees and Costs

    The Gnewuchs also assign error to the trial court's award of attorney fees to Settles on the basis that the amount was disproportionate to the damages and included an award on a cause of action that is not permitted by law.

    "The general rule in Washington, commonly referred to as the 'American rule,' is that each party in a civil action will pay its own attorney fees and costs." *Berryman v. Metcalf*, 177 Wn. App. 644, 656, 312 P.3d 745 (2013) (quoting *Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 296, 149 P.3d 666 (2006)). However, "trial courts may award attorney fees when authorized 'by contract, statute, or a recognized ground in equity.'" *Id.* (quoting *Cosmo. Eng'g*, 159 Wn.2d at 297). "The court should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time." *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). "In order to reverse an attorney fee award, an appellate court must find the trial court manifestly abused its discretion." *Id.* Such an abuse occurs when the trial court has "exercised its discretion on untenable grounds or for untenable reasons." *Id.*

    Here, the trial court found that Settles was entitled to attorney fees and costs pursuant to the replevin statute, RCW 7.64.035(3). Under that provision, trial courts may award "damages, court costs, reasonable attorneys' fees, and costs of recovery." RCW 7.64.035(3). "If, as in this case, an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are

authorized from time spent on other issues." *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d 988 (1994). However, if "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees." *Id.* at 673. As all of Settles' claims relate to the same fact pattern, the trial court expressly found that her cause of action for replevin was not segregable from her other claims.[6]

Based upon Settles' motion for attorney fees and costs along with the supporting declarations, the trial court found that she incurred $110,932.50 in attorney fees and $4,987.81 in costs. It further determined that the attorney fees were objectively reasonable pursuant to its own calculations under the lodestar method, considering the hourly rates of the attorneys in light of their experience and expertise, and upon consideration of the invoices submitted by the attorneys that showed the hours they worked. Accordingly, the trial court awarded $110,932.50 in attorney fees and $4,947.81 in costs to Settles.

"A determination of reasonable attorney fees begins with a calculation of the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Berryman*, 177 Wn. App. at 660 (quoting *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632 (1998)). "A lodestar fee must comply with the ethical rules for attorneys, including the general rule that a

---

[6] The Gnewuchs offer no argument to address the trial court's finding that the award of attorney fees under the replevin statute was not segregable from the other claims. Accordingly, we do not consider their bald assertion that the "statute cannot serve as a basis for an award of all fees in this case." *See Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

lawyer shall not charge an unreasonable fee." *Id.* at 660 (citing RPC 1.5). As our Supreme Court has explained, "the lodestar calculation is presumptively reasonable." *Chuong Van Pham*, 159 Wn.2d at 541 (citing *City of Burlington v. Dague*, 505 U.S. 557, 559, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992)).

Here, the Gnewuchs only challenge the award of attorney fees on the ground that it was "multiple times more than the amount requested in damages." They then assert that the award was "clearly excessive" and request that we "reduce the fee award based on that disparity." However, the Gnewuchs offer no citation to the record or specific argument as to how the amount awarded here was unreasonable under the circumstances. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). It is also worth noting that the trial court awarded Settles $15,474.96 in attorney fees based upon pretrial conduct of the Gnewuchs which was deemed to be in violation of the preliminary injunction and ultimately resulted in the trial court finding them in contempt. The Gnewuchs do not address this aspect of the trial proceedings in their challenge to the attorney fee award. We decline to further consider this inadequately briefed issue and conclude that the trial court's award of attorney fees to Settles was not in error.

B. Attorney Fees on Appeal

Settles requests reasonable attorney fees and costs on appeal pursuant to RCW 7.64.035(3), RAP 18.1, and RAP 18.9. Under RAP 18.9, this court "may order a party or counsel . . . who uses these rules for the purpose of delay, [or]

files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed by the delay." RAP 18.9(a). "[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980). While the Gnewuchs do not prevail, their appeal was not so devoid of merit as to be frivolous and we decline to award fees on that basis. However, contingent upon compliance with RAP 18.1, Settles is entitled to reasonable attorney fees and costs as the prevailing party.

Affirmed.

_____

WE CONCUR:


_____     _____